IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **NEIL J. LOFQUIST, #M04121,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 18−cv−1305−NJR |
| | ) | |
| **CINDY GIMBER,** | ) | |
| **FRANK LAWRENCE,** | ) | |
| **LARISSA WANDRO,** | ) | |
| **ANN LAHR, and** | ) | |
| **SHERRY BENTON,** | ) | |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Neil Lofquist, an inmate of the Illinois Department of Corrections currently incarcerated in Menard Correctional Center ("Menard"), brings this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. In his Complaint, Plaintiff claims the defendants violated his First and Fourteenth Amendment rights by interfering with his mail. (Doc. 1).

This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from

1

such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Complaint and any supporting exhibits, the Court finds it appropriate to allow this case to proceed past the threshold stage.

## The Complaint

In his Complaint (Doc. 1), Plaintiff makes the following allegations: Plaintiff began researching his family's genealogy in 2014 with "few, if any, restrictions . . . imposed by the Menard Correctional Center's inmate mailroom." (Doc. 1, p. 5). On July 17, 2017, Plaintiff received a monetary settlement from Wexford Health Sources, Inc., allowing him to compensate "archivists, volunteers, and librarians for providing century old census records, obituaries, and unknown images of unknown relatives." *Id.* On September 20, 2017, an archivist, David D'Ondfrio of the United States Naval Academy, requested correspondence regarding Battleship Captain E.A. Lofquist. *Id.* Plaintiff instead received a mail return slip from Menard's mailroom supervisor stating: "Per administrative decision - info on others not allowed." *Id.* On October 20, 2017, Plaintiff received a mail return slip regarding correspondence from Uppsala Riksarkivet,

another archivist, about certain relevant dates for "fourth, fifth, and sixth great grandparents in Glottsta" for the same reason. (Doc. 1, p. 6). The same thing happened on October 30, 2017, with correspondence from Heidi Butler, from Lansing Public Library, about Plaintiff's mother, grandmother, and a relative's local obituary. *Id.*

On November 22, 2017, Plaintiff received another mail return slip for correspondence from someone at Perry County Genealogical Society regarding Theodore Lofquist of the 36th Aero Squadron. *Id.* The return slip indicates that maps were not permitted, and the items being returned were forbidden by institutional regulations. *Id.* On December 4, 2017, Plaintiff received correspondence from Adam J. Barrone of the Allen County Public Library Foundation notifying Plaintiff that he mailed Plaintiff information about Plaintiff's grandfather on November 2, but the envelope was refused and returned marked "items not permitted." *Id.* Plaintiff did not receive a mail return slip or an explanation as to why the mail was not permitted. *Id.*

On January 17, 2018, correspondence regarding Plaintiff's fourth great grandmother was returned. (Doc. 1, p. 7). The slip noted: "Per administrative decision: records on other people not allowed." *Id.* That same day, correspondence regarding Plaintiff's family history file from someone at the Harrison County Genealogical society was returned. *Id.* The slip noted: "no road maps" and "info on others not allowed per administrative decision." *Id.* On February 9, 2018, the same thing happened with correspondence from Stark County Library and St. Louis Public Library regarding various deceased family members of Plaintiff. *Id.* On April 9, 2018, of the three pages about Plaintiff's fourth great grandmother sent to Plaintiff by his aunt, Cynthia Cooper, only one page remained stapled to Cynthia's letter. *Id.* Plaintiff received no notice from the mailroom about the missing pages. *Id.*

"The rubber-stamping of intentional misconduct began against Plaintiff with

Administrative Review Board Member Ann Lahr, expanding prohibitive measures to cover the entire country of Sweden on Oct. 31, 2017." (Doc. 1, p. 11). Benton denied Plaintiff's grievance, in which he questions why his mail was not permitted. *Id.* Though Plaintiff presented legal arguments to Wandro and Benton in grievances, Wandro "found her nirvana by ignoring Plaintiff's authenticity, then fabricated policy even more irrational," and Benton noted "duplicate filings aren't necessary." *Id.* Plaintiff believes an inquiry into Mailroom Supervisor Gimber would be appropriate given the correspondence that was "lost before falling under the auspices of info-on-others" as "a convenient avoidance of paperwork," among other things. (Doc. 1, p. 12). Gimber "improvised" the "info-on-others" policy, and it was ratified by Assistant Warden Frank Lawrence. *Id.* Gimber and Lawrence had "arbitrary interests in conjuring [the] info-on-other policies" and "never cit[ed] actual security concerns for their illicit tactics. (Doc. 1, p. 13).

Wandro, a grievance officer, reviewed Plaintiff's grievances regarding the return of his mail and cited to departmental regulations and administrative decisions to deny the grievances. (Doc. 1, p. 13); (Doc. 1-2, p. 5). Subsequently, Benton, of the Administrative Review Board, determined that the mail issue was appropriately addressed by the administration at Menard after reviewing Plaintiff's grievances. (Doc. 1, p. 13).

Later, Plaintiff did not receive a mail return slip for a piece of mail that was returned. (Doc. 1, p. 14). "One hundred one correspondence requests from Plaintiff since October first have not been received from reputable organizations who have (mostly) corresponded with Plaintiff previously." (Doc. 1, p. 15). "Except for the seven mail return slips received by Plaintiff, Gimber (under Lawrence's supervision) withheld delivery of countless letters correctly addressed to Plaintiff, disregarding minimal procedural safeguards, subjecting Plaintiff to humiliatingly arbitrary administrative invasion, denying inmate and sender notification of the

rejection, and depriving the constitutional rights of the author of said correspondence the reasonable opportunity to protest blatantly illicit habits." (Doc. 1, p. 16).

Citing to a decision made by Lawrence, Gimber designated the class of individuals affected by the "info-on-others" policy to essentially include relatives of Plaintiff. (Doc. 1, p. 17). The information on others policy "was created for [Plaintiff]." *Id.* Gimber has also imposed "a blanket rejection of road maps to Plaintiff, versus the remaining population of Menard." (Doc. 1, p. 18). Plaintiff also notes that "it is common for inmates who have sizeable balances to be the focus of envy by Menard staff." (Doc. 1, p. 20). Plaintiff received a sizeable amount of money in his trust fund account just before the information on others policy was enforced against him. *Id.* Mailroom staff has access to inmate trust account balances. *Id.*

Plaintiff requests declaratory, monetary, and injunctive relief. (Doc. 1, pp. 20, 22-24).

## Discussion

Based on the allegations of the Complaint and the claims specifically articulated by Plaintiff, the Court finds it convenient to divide the *pro se* action into five counts.[1] The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit.

> **Count 1 –** Menard's policy prohibiting inmates from soliciting or possessing information on others, which was ratified, perpetuated, and expanded by Lawrence, Gimber, and Lahr is facially unconstitutional under the First Amendment.
>
> **Count 2 –** Gimber, Lawrence, Wandro, Lahr, and Benton violated Plaintiff's First Amendment rights by censoring and interfering with Plaintiff's incoming correspondence from individuals and organizations pursuant to Menard's "information on others" policy.

---

[1] Several of Plaintiff's "charges" were redundant, so the Court combined them where appropriate.

5

**Count 3 –** Gimber, Lawrence, and Wandro violated Plaintiff's Fourteenth Amendment rights by rejecting and/or confiscating records and correspondence, sometimes without notice or an opportunity to be heard, and denying Plaintiff's grievances regarding the same.

**Count 4 –** Benton, Lahr, Gimber, and Lawrence violated Plaintiff's right to equal protection under the Fourteenth Amendment by preventing ancestry mail from Sweden, any ancestry mail related to relatives of Plaintiff specifically, and correspondence with maps from being delivered to Plaintiff.

**Count 5 –** Gimber, Lawrence, and Wandro retaliated against Plaintiff for receiving a sizeable award in his inmate trust account, in violation of the First Amendment.

As discussed in more detail below, Counts 1 through 4 will be allowed to proceed. Any other intended claim that has not been recognized by the Court is considered dismissed without prejudice as inadequately pleaded under the *Twombly* pleading standard.

### Counts 1 and 2 - First Amendment Mail Claims

Prisoners have protected First Amendment interests in both sending and receiving mail. *Procunier v. Martinez*, 416 U.S. 396, 413-14 (1974). Nonetheless, prison administrators may place restrictions on incoming and outgoing mail. *Id.* When the challenged regulation or practice affects incoming mail, the standard set forth in *Turner v. Safely*, 482 U.S. 78 (1987)—that First Amendment restrictions on prisoners must be "reasonably related to legitimate penological interests"—is applied. Plaintiff claims that Menard's policy of denying inmates mail that features information on others is facially unconstitutional. At this early stage, the Court will not say that Plaintiff cannot succeed in this claim, so Count 1 will proceed past threshold against Lawrence and Gimber, the Menard officials that Plaintiff claims primarily created and perpetuated the policy. Count 1 will also proceed against Lahr, as she allegedly expanded the "prohibitive measures to cover the entire country of Sweden on Oct. 31, 2017." (Doc. 1, p. 11).

Plaintiff also claims that Gimber, Lawrence, Wandro, Lahr, and Benton are applying the "information on others" policy to deprive him of correspondence and documents from various individuals and entities he has enlisted to help him with researching his family history, in violation of his First Amendment rights. At this early stage, Plaintiff has implicated Lawrence, Gimber, and Lahr for this alleged deprivation, as Lawrence and Gimber allegedly created and perpetuated the general "information on others" policy that negatively impacted his genealogy research, and Lahr allegedly expanded it to include communication from Sweden, which particularly affected Plaintiff given his Swedish heritage.

Plaintiff has failed to implicate Wandro and Benton, however. "Prison officials who simply processed or reviewed inmate grievances lack personal involvement in the conduct forming the basis of the grievance." *Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017) (citing *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001)). Plaintiff's allegations do no more than suggest Wandro and Benton reviewed Plaintiff's grievances about the mailroom issue. Any other claim he seeks to bring against them is unclear and therefore fails under the *Twombly* pleading standard. Count 2 will proceed against Lawrence, Gimber, and Lahr and will be dismissed without prejudice against Wandro and Benton.

### **Count 3 – Due Process**

The Fourteenth Amendment provides that states shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Plaintiff has invoked the guarantee of procedural due process in contending that the prison was required to provide him with notice and an opportunity to be heard prior to rejecting or confiscating correspondence addressed to him.

A court evaluating a due process claim must determine whether the plaintiff has been

7

deprived of a constitutionally protected interest in life, liberty, or property. *See Perez–Acevedo v. Rivero–Cubano*, 520 F.3d 26, 30 (1st Cir. 2008) ("The test for a procedural due process violation requires the plaintiffs to show first, a deprivation of a protected ... interest, and second, a denial of due process.").

> In *Procunier v. Martinez*, the Supreme Court held "[t]he interest of prisoners and their correspondents in uncensored communication by letter, grounded as it is in the First Amendment, is plainly a 'liberty' interest within the meaning of the Fourteenth Amendment even though qualified of necessity by the circumstance of imprisonment."

*Bonner v. Outlaw*, 552 F.3d 673, 676 (8th Cir. 2009) (quoting *Procunier v. Martinez*, 416 U.S. 396, 418 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401, 413-14 (1989)). The Eighth Circuit in Bonner concluded that the "case law is clear that an inmate has a right to procedural due process-including notice-whenever any form of correspondence addressed to that inmate is rejected." *Bonner*, 552 F.3d at 678.

"[T]o determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate." *Zinermon v. Burch*, 494 U.S. 113, 126 (1990). Plaintiff and those with whom he was corresponding were denied notice of the rejection of "countless letters correctly addressed to Plaintiff." (Doc. 1, p. 16). They were also not given a "reasonable opportunity to protest." *Id.* Plaintiff, therefore, has sufficiently alleged a denial of adequate notice and opportunity to appeal an adverse determination, for the purposes of stating a viable due process claim. Accordingly, Count 3 will proceed past threshold against Gimber and Lawrence who allegedly withheld delivery or otherwise sanctioned the withholding.

To the extent Plaintiff seeks to bring a claim based on the denial of grievances on this issue, the Seventh Circuit has "specifically denounc[ed] a Fourteenth Amendment substantive

due process right to an inmate grievance procedure." *Grieveson v. Anderson*, 538 F.3d 763, 772 (7th Cir. 2008). As explained in *Antonelli v. Sheahan*, 81 F.3d 1422, 1430-31 (7th Cir. 1996), "any right to a grievance procedure is a procedural right, not a substantive one. Accordingly, a state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." *Id.* at 1430-31 (internal citations omitted). Because Plaintiff had no expectation of a particular outcome of his grievances or complaints, there is no viable claim which can be vindicated through 42 U.S.C. § 1983. Given the allegations, Wandro's involvement in the denial of Plaintiff's mail appears to be limited to the denial of grievances on the issue. Accordingly, Count 3 shall be dismissed against Wandro.

### Count 4 – Equal Protection

The Equal Protection Clause of the Fourteenth Amendment protects individuals from governmental discrimination, typically on account of race, national origin, or sex. *Swanson v. City of Chetek*, 719 F.3d 780, 783 (7th Cir. 2013). The Equal Protection Clause may be invoked where similarly situated individuals are being intentionally treated differently without a rational relationship to a legitimate state purpose. *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591, 601-02 (2008). An equal protection violation may also arise on a "class of one" theory, where an individual is singled out for different treatment for no rational reason. "The classic class-of-one claim is illustrated when a public official, 'with no conceivable basis for his action other than spite or some other improper motive . . . comes down hard on a hapless private citizen.'" *Swanson v. City of Chetek*, 719 F.3d 780, 783-84 (7th Cir. 2013) (citing *Lauth v. McCollum*, 424 F.3d 631, 633 (7th Cir. 2005)). "A class-of-one plaintiff must plead and prove

that he was 'intentionally treated differently from others similarly situated[2] and that there is no rational basis for the difference in treatment.'" *Glover v. Dickey*, 668 F. App'x 158, 160 (7th Cir. 2016) (citing *D.B. ex rel. Kurtis B. v. Kopp*, 725 F.3d 681, 685-86 (7th Cir. 2013) (quoting *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008)).

Plaintiff claims that his equal protection rights were violated because he was singled out by Lawrence and Gimber with a rule prohibiting him from receiving maps and information on others, which has prevented him from effectively conducting research on his family history. He also claims that Lahr allegedly expanded this rule to prohibit any information from the state archives of Sweden. His claim therefore appears to ride the line between a class of one claim, with respect to Lawrence and Gimber, and an equal protection claim for discrimination based on national origin with respect to Lahr.

Taking Plaintiff's allegations as true and considering the low pleading standard, the Court finds that he has stated an equal protection claim upon which relief may be granted against Gimber, Lawrence, and Lahr for imposing certain restrictions on only his incoming mail, and on incoming mail from Sweden specifically. Count 4 will therefore proceed against these defendants.

## Count 5 – Retaliation

To prevail on a § 1983 claim of First Amendment retaliation, Plaintiff must show that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future"; and (3) a causal connection between the two. *Watkins v. Kasper*, 599 F.3d 791, 794 (7th Cir. 2010) (citing *Bridges v. Gilbert*, 557

---

[2] While most circuits require highly specific allegations regarding the "similarly situated" element of an equal protection claim to validly state such a claim, the Seventh Circuit has set an extremely low pleading standard. *Geinosky v. City of Chicago*, 675 F.3d 743, 747–48 (7th Cir. 2012).

10

F.3d 541, 546 (7th Cir. 2009) (citation omitted)).

Plaintiff claims that "it is common for inmates who have sizeable balances to be the focus of envy by Menard staff." (Doc. 1, p. 20). He further suggests that the information on others policy's implementation shortly after he received a large deposit in his trust account shows that his having a large balance was the catalyst for the policy. That being said, Plaintiff's Complaint is devoid of allegations that suggest conduct protected by the First Amendment, such as filing grievances or complaining about his conditions of confinement, inspired the policy. *See, e.g.*, *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002). Accordingly, Count 5 will be dismissed without prejudice.

## Injunctive Relief

In the Complaint, Plaintiff has a section titled "Preliminary Injunction," indicating his desire for preliminary injunctive relief. (Doc. 1, p. 20). In order to obtain a preliminary injunction, Plaintiff must demonstrate that: (1) his underlying case has some likelihood of success on the merits; (2) no adequate remedy at law exists, and; (3) Plaintiff will suffer irreparable harm without the injunction. *Woods v. Buss,* 496 F.3d 620, 622 (7th Cir. 2007). If those three factors are shown, the district court must then balance the harm to each party and to the public interest from granting or denying the injunction. *Id.*

Plaintiff has not explained how he is at risk of suffering irreparable harm without preliminary relief. He has apparently been subjected to the information on others policy for almost a year, and there is no indication that any further use of the policy on him will inflict irreparable harm. Given this lack of urgency, and the fact that Plaintiff failed to file a separate motion pursuant to Federal Rule of Civil Procedure 65 seeking interim relief, Plaintiff's request for a preliminary injunction is **DENIED** without prejudice. Plaintiff may still request a

11

preliminary injunction by filing a separate motion pursuant to Rule 65, should he so choose.

**Disposition**

**IT IS HEREBY ORDERED** that **COUNTS 1** and **2** will **PROCEED** against **GIMBER**, **LAWRENCE**, and **LAHR** and are **DISMISSED** without prejudice against all other defendants.

**IT IS FURTHER ORDERED** that **COUNT 3** will **PROCEED** against **GIMBER** and **LAWRENCE** and is **DISMISSED** without prejudice against all other defendants.

**IT IS FURTHER ORDERED** that **COUNT 4** will **PROCEED** against **GIMBER**, **LAWRENCE**, and **LAHR** and is **DISMISSED** without prejudice against all other defendants.

**IT IS FURTHER ORDERED** that **COUNT 5** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that **BENTON** and **WANDRO** are **DISMISSED** from this action without prejudice for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that as to **COUNTS 1**, **2**, **3**, and **4**, the Clerk of Court shall prepare for **GIMBER**, **LAWRENCE**, and **LAHR**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a defendant who no longer can be found at the work address provided by

Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, the defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings. Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Wilkerson for disposition, pursuant to Local Rule 72.2(b)(3) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: July 19, 2018**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**